IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 18, 2025

## STATE OF TENNESSEE v. RONALD GRAY

**Appeal from the Criminal Court for Sullivan County**
**Nos. S68,369 S68,370 S68,397    James F. Goodwin, Jr., Judge**

_____

### No. E2024-01656-CCA-R3-CD
_____

In 2018, the Defendant, Ronald Gray, pleaded guilty to several drug related charges in exchange for a total effective sentence of eleven years. He was ordered to serve a portion of his sentence in confinement and then released on May 1, 2018, to Community Corrections. In 2019, the trial court entered an amended judgment to reflect an enhanced sentence for his "plea to Violation of Community Corrections." The order indicated that, as of June 5, 2019, his Community Corrections was revoked, he was reinstated and transferred to state probation, and he had to restart the eleven years of probation. In June 2020, the trial court issued an arrest warrant for the Defendant based upon a probation violation. In 2024, the trial court ordered that the Defendant be incarcerated for the duration of his sentence based on the probation violation. The Defendant appeals, but his notice of appeal was not timely filed. As such, we dismiss the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and MATTHEW J. WILSON, JJ., joined.

Randall D. Fleming, Assistant Public Defender, Blountville, Tennessee for the Appellant, Ronald Gray.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Barry Staubus, District Attorney General; and Matthew William Darby, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from the Defendant's convictions for drug related offenses. On August 22, 2017, in case number S68,369, a Sullivan County grand jury indicted him for

two counts of aggravated burglary, one count of theft of property valued over $1,000 but less than $2,500, and one count of theft of property valued less than $1,000 (all alleged to have occurred on December 22, 2016). In case number S68,397 and S68,290, he was indicted for theft of property valued more than $1,000 but less than $2,500 (alleged to have occurred on December 21, 2016). In case number S68,370, he was indicted for possession of methamphetamine within 1000 feet of an elementary school, possession of drug paraphernalia, and possession of a "legend drug" (alleged to have occurred on May 26, 2017).

On February 27, 2018, in a plea encompassing all the aforementioned indictments, the Defendant entered a plea of guilty to two counts of theft of property valued over $1,000 but less than $2,500, a Class E felony, and was sentenced to one year and six months of community corrections for each conviction; one count of possession with intent to sell methamphetamine, a Class B felony, and was sentenced to eight years of Community Corrections to begin after he was released from jail on May 1, 2018; possession of drug paraphernalia, and was sentenced to eleven months and twenty-nine days; and possession of a legend drug, and was sentenced to thirty days. The theft sentences were ordered to run consecutively to each other and consecutively to the methamphetamine conviction. All the other convictions were ordered to run concurrently, for a total effective sentence of eleven years of Community Corrections, after his release from jail May 1, 2018.

On June 11, 2019, the trial court filed an amended judgment for the methamphetamine conviction in S38,370. In it, the court amended the conviction to be ten years instead of eight years. The minutes accompanying the judgment noted that the judgment had been amended to reflect the sentence being enhanced as part of a plea to a "Violation of Community Corrections." The probation officer stated that the Defendant's Community Corrections was revoked/reinstated and that he was transferred to state probation. He was to serve eleven years of probation beginning August 9, 2019. His probation was set to expire on June 5, 2030.

On June 22, 2020, the trial court issued an arrest warrant for the Defendant based upon a probation violation. The warrant alleged that the Defendant had failed to report on September 26, 2019, and had not made contact with probation from that date until the date of the affidavit, June 22, 2020. It also alleged that he had not paid his fines, fees, and restitution and had not made a payment since July 11, 2018.

The trial court held a hearing on September 11, 2024, during which the following occurred: the Defendant's attorney informed the trial court that the Defendant intended to enter a plea of guilty to violating his probation. After ensuring that the Defendant understood his rights, the trial court asked the Defendant how he chose to plead. The Defendant said he was entering a plea of guilty to the June 22, 2020 violation warrant. The

2

Defendant also stipulated that the facts in the warrant were accurate. The trial court found that the Defendant was guilty of violating his probation and it revoked his probation.

The Defendant then testified saying that he had lived at the same address in Kingsport, Tennessee for nine years. He worked framing houses, typically forty hours per week and was paid $17.50 per hour. His rent was $300 per month. He said that the day that he failed to report to his probation officer, he let his probation officer, Mr. Drew March, know that the person who was supposed to bring him for his appointment was having car trouble. The Defendant said his probation officer said that there would be a warrant out for his arrest, so he did not report again.

The Defendant said that, in March 2024, he had also had his driver's license suspended because he was driving a vehicle owned by someone else, and the Defendant did not have a valid driver's license. He was arrested and incarcerated since that time because of the violation of probation warrant.

During cross-examination, the Defendant agreed that when he was first released to probation he was placed in the "Hay House," a Community Corrections program. He was there for about three months before he absconded, so his Community Corrections was converted to state probation. He also served some time for that probation violation and was released August 9, 2019. He then failed to report in September 2019. He agreed that from that time until 2024 he was not reporting to probation and not being drug tested. If he had not been arrested for driving on a suspended license, he would still not be reporting.

Joe Wright, Jr., testified that the Defendant had helped him remodel a bathroom, and he helped the Defendant get rides since the Defendant could not drive. He said he believed the Defendant had turned his life around.

Tylin Sibert testified that she had known the Defendant for between two and three years and that the Defendant had helped her family. She said that she suffered from medical issues and that the Defendant would ride with her to doctor's appointments and take care of her. He also helped his mother-in-law and neighbor doing odd jobs.

During arguments, the Defendant's counsel acknowledged that the Defendant had absconded for a lengthy period of time, but argued that while he was not reporting he was working full time and helping others in the community. The Defendant's counsel asked that the Defendant be returned to probation.

The State disagreed, noting that the Defendant had only participated successfully in Community Corrections for four months before he tested positive for drugs and absconded. He then was arrested, served jail tame, and was released in August 2019. The Defendant

was on probation for less than two months when he failed to report and continued to not report for four years. Given that this was his second probation violation, the State asked that the Defendant be ordered to serve his sentence.

The trial court ruled:

As the State pointed out, and it's in the court file, [the Defendant] was placed in Community Corrections on February 9th 2018, stopped reporting and absconded from supervision there on June 6, 2018, wasn't picked up until April the 11th of 2019. It looks like on June 5th of 2019, he was reinstated to supervised probation and on September of 2019, [he] failed to report and made no further contact with probation office. I understand that he testified that he's worked during that time. He testified that he's not doing drugs. He admitted on cross-examination that the only reason that he is answering this warrant now is because he got caught driving and during his direct, he very clearly made it sound like he didn't have a license, therefore he didn't drive at all and that was his basis for not going to probation is because he didn't have a license, and he did not drive, only to find out later in his direct that and on cross that the whole reason that we have him in custody on this warrant is that he was caught driving. As this is the second Violation Warrant for absconding from supervision, the court's of the opinion that he will have to serve his sentence, 11 years. I believe it says Range I Offender.

. . . . [H]e had 442 days credit and then he's been in since March the 8th, he'll get credit from March the 8th until today. I expect he'll come up for parole pretty quickly. . . .

On September 12, 2024, the trial court entered an order revoking the Defendant's probation and ordering him to serve his eleven-year sentence in confinement. On November 4, 2024, the Defendant filed his notice of appeal.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court abused its discretion when it ordered him to serve his sentence in confinement because it did not consider his work history and community involvement. He asserts that incarceration is not necessary and carries a greater burden on the Defendant than necessary for rehabilitation. The State counters first that the Notice of Appeal in this case was not timely filed, so this court should

dismiss the appeal. It further contends that the trial court did not err when it ordered that the Defendant serve his sentence in confinement.

Pursuant to Tennessee Rules of Appellate Procedure 4(a), a notice of appeal "shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from[.]" Thus, the notice of appeal in this case should have been filed within thirty days of the entry of the September 24, 2024 order.

The untimely filing of a notice of appeal is not always fatal to an appeal. As stated in Rule 4(a), "in all criminal cases the 'notice of appeal' document is not jurisdictional and the timely filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). The Defendant now asks that this court waive the timely filing of the notice of appeal. "In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005), *no Tenn. R. App. P. 11 application filed*. Waiver is not automatic and should only occur when "the interest of justice" mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction. *Hill v. State*, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App. Feb. 13, 1996).

The notice of appeal in this case was not timely filed. After a thorough review of the record and the relevant authorities, we conclude that the interest of justice does not mandate a waiver in this case. Accordingly, we dismiss this appeal.

### III. Conclusion

In accordance with the foregoing, we dismiss the Defendant's appeal.

_____s/ **_Robert W. Wedemeyer_**_____

ROBERT W. WEDEMEYER, PRESIDING JUDGE

5